Stewart **BYERS**, and Iola Byers, Plaintiffs,

v.

**CITY OF RENO**, a municipal corporation, et al., Defendants.

No. CV–R–84–141–ECR.

United States District Court, D. Nevada.

July 1, 1987.

Lawrence J. Semenza, Reno, Nev., for plaintiffs.

Gary G. Bullis, Reno, Nev., for defendants.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

Defendant Washoe County has moved the Court for summary judgment on the § 1983 count in this action. In addition, Washoe County requests that the pendent state claims also be dismissed if the federal claim is removed from the suit. The plaintiffs oppose both requests, arguing that substantial questions of fact remain for disposition at trial, and that the Court has

the power to hear state claims under the doctrine of pendent jurisdiction.

FACTS

This case arises out of plaintiff Iola Byers' hospitalization at Washoe Medical Center during the month of September, 1983. In 1983, Washoe Medical Center was still a publicly run hospital, under the control of the Washoe County Board of Commissioners. Mrs. Byers suffered at that time from a degenerative disease which rendered her dependent on a respirator. During the time in question, she was in the cardiac intensive care unit (CIC) of the hospital, where her husband, Stewart, stayed by her side.

While she was in the CIC, the hospital staff, specifically the respiratory technicians, began to notice that the adjustments on Mrs. Byers' respirator had been altered. Because these technicians believed that they were the only ones in the hospital with the authority to alter the respirator settings, they suspected foul play. Their suspicion focused upon Mr. Byers, as only he had had the opportunity to change the settings. The technicians began to watch Mrs. Byers' settings even more closely, and noted that other changes did occur.

The hospital staff soon challenged Mr. Byers about the changes in the ventilator settings. He adamantly denied the charges, claiming that he had never made any adjustments. Inasmuch as Mr. Byers was already selected as the prime candidate for the unauthorized settings, the Director of Social Service for the hospital, Mr. Hoover, contacted the corporate counsel, requesting advice about the proper course of action. Counsel, Mr. Hadley, advised that Hoover notify the county district attorney about the potentially life threatening situation.

Acting upon counsel's advice, Mr. Hoover then contacted the district attorney, Mr. Lane. Mr. Lane indicated that he would notify the local police, who would investigate the matter. Soon thereafter, two Reno police officers arrived at the hospital, and proceeded to interview everyone connected with the problems with Mrs. Byers. The police officers gave Mr. Hoover several statement forms to be filled out by those individuals with relevant information who were not available for police interviews at that time.

After all of the information had been gathered by the police, with Mr. Hoover's assistance, the officers reported to the deputy district attorneys who had been assigned to the case. The district attorneys advised that probable cause existed to arrest Mr. Byers. The police officers, acting upon the advice of the DA's office, then proceeded to place Mr. Byers under arrest.

It appears, however, that several of the other staff in the intensive care unit, most notably doctors and nurses, felt that they also had the authority to change the ventilator settings when the need arose. Deposition testimony of several of the staff on duty at that time indicates that there was a conflicting policy regarding the responsibility to change the ventilator settings. It thus appears that someone besides Mr. Byers could easily have altered the respirator settings. All charges against Mr. Byers were later dropped. This suit followed.

DISCUSSION

In its motion for summary judgment, Washoe County argues that no liability under § 1983 may be imposed against it, as it took no actions which violated the plaintiffs' constitutional rights. It is axiomatic that a municipal body, such as a county, may not be held liable for the actions of its employees under *respondeat superior*. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1977). Such a governmental organization is liable only if its custom or policy inflicts the injury to the plaintiff's constitutional rights. *Id.*

The defendant argues in this regard that there was no custom or policy adopted by Washoe County which caused the infliction of the plaintiffs' injury. In support of this contention, the defendant submits affidavits from the County Commissioners and the hospital administrators which indicate that there was no policy in place at the time of this occurrence regarding the unau-

thorized adjustment of respirators. In addition, the affidavits indicate that there was no policy or custom regarding the course of action to be followed with respect to family members suspected of attempting to murder their family member patients. In view of the fact that there was no policy or custom on the part of the county, the defendant argues that it has no liability under § 1983.

■ The plaintiffs argue in response that the conflicting regulations regarding the respirator's settings constitute a policy sufficient for § 1983 purposes. It appears to the Court, however, that this is not the sort of policy which the civil rights statute contemplates. Initially, a "policy" for purposes of § 1983 is "a course of action consciously chosen from among various alternatives." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1984) (plurality). A conflicting set of regulations regarding the adjustment of respirator cannot be identified as a policy, in that a conflict, by its very nature, is not a single course of action selected from alternatives. Rather, a conflict among alternative indicates, if anything, the *lack* of a policy, as it shows that the decisionmakers for the municipality have not acted with finality on this precise topic.

In addition, even if the conflicting set of regulations regarding ventilator adjustments could be labeled as a "policy" of Washoe County, it does not appear that that policy caused the constitutional violation in this case. The conflicting regulations undoubtedly caused suspicion to focus upon Mr. Byers, but it was the fact that he was ultimately accused of attempting to murder his wife and ultimately arrested that caused the constitutional violation. It was his arrest without probable cause, therefore, which caused the constitutional violation, not the unusual circumstances at the hospital which made him a suspect.

■ It could be argued that the failure of the county authorities to investigate the entire circumstances surrounding this incident amount to a policy or custom. In order to make such an accusation, however, it appears that the police officers and the district attorneys who did the actual investigating should have been named as defendants. Plaintiffs have chosen not to pursue this avenue, however, having allowed the police officers to be dismissed and never having named the district attorneys. Instead, the plaintiffs argue that the hospital social services director, Mr. Hoover, developed the policy of failing to investigate such charges before an arrest was made. *See Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (policy is established when the official or officials responsible for establishing final policy with respect to the subject matter in question make a deliberate choice to follow a course of action). In this case, there is no doubt that Mr. Hoover was not the official responsible for making policy regarding the existence of probable cause for arrests. As the evidence in the defendant's affidavits demonstrates, Mr. Hoover's position was related solely to the social services function at the hospital. He was in no way authorized or responsible for making the arrest policy for the entire county. His actions, therefore, do not constitute a policy or custom of Washoe County.

In view of the absence of any identifiable custom or policy on behalf of Washoe County, this 1983 claim must be dismissed from the suit. As noted above, however, the County also requests that all pendent state claims against it also be dismissed. The plaintiffs argue in opposition that the Court has discretion to retain state claims, even where the federal action is dismissed, if the state claims would be time barred in state court.

■ There is little doubt that the Court has the power to retain and hear the pendent state claims in this matter, even though the federal claim has been dismissed. The Court held in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), that district courts ought to dismiss state claims if the federal claims were dismissed before trial. *Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1969), later softened the Court's previous position. In that

case, it was held that dismissal of the state claims after the federal claims were dropped should be viewed as a matter of discretion, not power. *Id.*, at 404, 90 S.Ct. at 1213. In other words, the district court has the *power* to retain the state claims, but it should exercise its discretion in deciding whether the claims should be heard. *Id.* Thus, where a federal claim, which is not insubstantial, is dismissed before trial, the district court should exercise its discretion in deciding whether to retain the state claims.

In the present case, the former federal claim was not insubstantial. Most courts have applied a frivolity test when deciding whether a federal claim is substantial enough to retain state claims. *See, e.g., Garner v. Pearson,* 732 F.2d 850, 854 (11th Cir.1984) (test is whether federal claim has any foundation of plausibility); *Norris v. Frame,* 585 F.2d 1183, 1189 n. 18 (3rd Cir.1978) (where federal claim is not a frivolous one, and considering the factual relation between the claims and the fact that the plaintiff is barred in state courts by the statute of limitations, the district judge has discretion to keep the state claims). In this case, the federal claim was neither frivolous nor without plausible foundation when it was filed. At the outset of this case, it should have appeared to any practitioner that a § 1983 claim might lie on these facts. That discovery ultimately failed to reveal a custom or policy on the part of the County does not warrant the labeling of the claim as frivolous.

On this basis, therefore, the Court has the discretion to keep the state claims. Because these are matters solely of state law, however, it is the Court's opinion that they should be resolved in the state courts, if at all possible. Therefore, the Court will retain jurisdiction over these state claims, unless the defendant executes and files with the Court a waiver of the state statute of limitations defense. If such a waiver is executed by the defendant, and filed with the Court, the state claims will also be dismissed. If no such waiver is executed, the Court will retain jurisdiction over the state claims, and they will be heard in this Court.

IT IS, THEREFORE, HEREBY ORDERED that the defendant's motion for summary judgment is granted in part, and denied in part.

IT IS FURTHER ORDERED that summary judgment is granted with respect to the § 1983 claim against defendant Washoe County, owing to the absence of any genuine issue of material fact regarding the customs or policies of that defendant.

IT IS FURTHER ORDERED that summary judgment is denied with respect to the pendent state claims. The defendant shall have twenty days from the date of this order within which to execute a waiver of the state statute of limitations defense regarding the remaining state claims. If such a waiver is executed and filed with the Court, the state claims remaining against this defendant shall be dismissed. If no such waiver is executed and filed with the Court, the Court shall retain jurisdiction over these state claims.